IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG

**DOROTHY CHRISTIAN and
ELMER CHRISTIAN,**

       Plaintiffs,

v.                                         CIVIL ACTION NO. 3:12-CV-72
                                             (JUDGE GROH)

**THE UNITED STATES OF AMERICA,**

       Defendant.

## MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

On this day, the above-styled matter came before the Court for consideration of the Defendant's Motion for Summary Judgment [Doc. 30], filed on July 5, 2013. This motion has since been fully briefed and is now ripe for decision. Having reviewed the record and considered the arguments of the parties, this Court **FINDS** that the Motion for Summary Judgment must be **GRANTED** in part and **DENIED** in part.

### I. Background

**1. Factual Allegations**

On January 29, 2010, Dorothy and Elmer Christian, the Plaintiffs, drove to the Veterans Administration Medical Center ("VA") in Martinsburg, West Virginia to attend a party for Mrs. Christian's brother-in-law, who was a patient there. ([Doc. 34-1], p. 10:7-16). They had visited the VA on prior occasions to visit this patient.

Upon arriving at the VA, Mr. Christian parked in a handicap parking space. The

1

Plaintiffs had a handicap license plate on their car based on his disability. ([Doc. 34-1], pp. 9:19-10:6). The space in which the Plaintiffs parked is in a row of three handicap spaces [Doc. 31-1]. In front of the far right parking space in this row, there is a storm drain. *Id.* In his deposition, Mr. Christian testified that the Plaintiffs parked in the far left the space in this row and that they had not parked in this set of spaces before January 29, 2010. ([Doc. 34-2], p. 7:5-7, 15-19).

The Plaintiffs then walked into the VA to attend the party. Based on Mrs. Christian's deposition testimony, the Plaintiffs left the party between 4:30 p.m. and 5:00 p.m. ([Doc. 34-1], p. 13:8-19). While walking back to the car, Mrs. Christian stepped in the storm drain area and fell. The Plaintiffs allege that she sustained injuries as a result of this fall and that Mr. Christian has suffered loss of consortium. ([Doc. 1], ¶¶ 15-16).

**2. Procedural History**

On August 7, 2012, pursuant to the Federal Tort Claims Act ("FTCA"), the Plaintiffs filed a complaint against the United States of America, seeking relief related to Mrs. Christian's fall. [Doc. 1]. To that end, the Plaintiffs raised claims for negligence as to Mrs. Christian and loss of consortium as to Mr. Christian. Their negligence claim alleges that the U.S. Department of Veterans Affairs breached a duty to the Plaintiffs in the following ways:

a. by maintaining and/or positioning the handicap parking space at issue in an improper proximity to a hidden storm drain;

b. by negligently maintaining and/or positioning said storm water drain at an improper slope that causes the same to be hidden from human sight;

c.  by negligently maintaining and/or positioning said handicap parking space so as the same is in improper proximity to any access ramp or other appropriate passage to the Martinsburg VA Medical Center's buildings therefore directing handicap persons toward said hidden storm water drain;

d.  by negligently maintaining said storm water drain as the same was covered in debris further causing the same to be hidden from human sight;

e.  by maintaining, positioning, and/or operating said handicap parking space in violation of the Americans With Disabilities Act and the ATSM F-1637-09, Standard Practices for Safe Walking Surfaces; and/or

f.  by otherwise engaging in acts of negligence which caused injury to Plaintiffs.

([Doc. 1], ¶ 14).

On July 5, 2013, the United States filed a Motion for Summary Judgment [Doc. 30]. The Plaintiffs filed a response to this motion on July 26, 2013 [Doc. 34], and the United States filed a reply on August 9, 2013 [Doc. 35]. Accordingly, this motion is ripe for the Court's review.

## II. Jurisdiction

The district courts have exclusive jurisdiction over claims brought under the FTCA. 28 U.S.C. § 1346(b)(1). Therefore, the Court has jurisdiction over this matter because the Plaintiffs bring claims pursuant to this statute.

### III. Legal Standard

Rule 56 of the Federal Rules of Civil Procedure governs summary judgment. *See* **FED. R. CIV. P. 56.** Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." ***Celotex Corp. v. Catrett***, 106 S. Ct. 2548, 2552, 477 U.S. 317, 322 (1986). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." ***Anderson v. Liberty Lobby, Inc.***, 477 U.S. 242, 248 (1986). Thus, the Court must conduct "the threshold inquiry of determining whether there is the need for a trial- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250.

The party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." ***Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.***, 106 S. Ct. 1348, 1356, 475 U.S. 574, 586 (1986). That is, once the movant has met its burden to show an absence of material fact, the party opposing summary judgment must then come forward with affidavits or other evidence demonstrating there is indeed a genuine issue for trial. **FED. R. CIV. P. 56**; ***Celotex Corp.***, 166 S. Ct. at 2552-54, 477 U.S. at 323-25; ***Anderson***, 477 U.S. at 248. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." ***Anderson***, 477 U.S. at 249 (citations omitted). A motion for summary judgment should be denied "if the evidence is such that conflicting inferences may be drawn therefrom, or

if reasonable men might reach different conclusions." *Phoenix Sav. & Loan, Inc. v. Aetna Cas. & Sur. Co.*, 381 F.3d 245 (4th Cir. 1967); *see also Anderson*, 477 U.S. at 253 (noting that "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.").

## IV. Discussion

When considering the United States's Motion for Summary Judgment, this Court will apply West Virginia law. District courts that hear a claim brought under the FTCA must determine whether the "United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). The parties do not dispute that the alleged act or omission underlying this action occurred in Martinsburg, West Virginia. ([Doc. 31], p. 1); ([Doc. 34], pp. 1-2). Accordingly, application of West Virginia law is proper.

### 1. Summary Judgment as to Private Cause of Action Brought Under Title III of the Americans with Disabilities Act ("ADA")

First, the United States argues that the Court should grant summary judgment because the Plaintiffs cannot sustain a private cause of action for damages under Title III of the ADA. Title III of the ADA, which "forbids discrimination against disabled individuals in . . . public accommodations," would apply to the instant case. *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 675 (2001); *see also* 42 U.S.C. § 12182(a). However, while it is well established that this provision "does not provide for a private cause of action for damages," *Gregory v. Otac, Inc.*, 247 F. Supp. 2d 764, 769 (D. Md. 2003), the Plaintiffs are seeking damages under West Virginia negligence law, not the ADA. ([Doc. 34], pp. 5-6); ([Doc. 1], ¶¶ 13-16). The United States therefore is not entitled to

5

summary judgment on this basis.

### 2. Summary Judgment as to Negligence Claim Based on Violation of Title III of the ADA

Next, the United States argues that, in the absence of other evidence of negligence, the Plaintiffs cannot sustain their negligence claim solely on a violation of the ADA. ([Doc. 31], pp. 6-9). The United States supports this argument, in part, by contending that this claim is not cognizable because Mrs. Christian, as a non-disabled individual, is not in the class of persons that the ADA intends to protect. In response, the Plaintiffs argue that they can bring such a claim and aver that the fact that Mrs. Christian may not be in the class that the ADA seeks to protect is irrelevant to this claim. ([Doc. 34], pp. 22-24).

In West Virginia, a negligence claim premised on the violation of a statute is prima facie evidence of negligence, not negligence per se. ***Gillingham v. Stephenson***, 551 S.E.2d 663, 670 (W. Va. 2001). Such a violation is actionable only if it is "the proximate cause of the plaintiff's injury." Syl. pt. 2, ***Waugh v. Traxler***, 412 S.E.2d 756, 757 (W. Va. 1991).

Additionally, when the "violation of a statute is the centerpiece of a theory of liability, the question arises whether the statute creates an implied private cause of action." ***Arbaugh v. Bd. of Educ., County of Pendleton***, 591 S.E.2d 235, 239 (W. Va. 2003); *see also* ***Shawkey v. Lowe's Home Ctrs., Inc.***, No. 2:09-CV-01264, 2011 WL 1229784, at *5 (S.D. W. Va. Mar. 30, 2011) (citing ***Arbaugh*** to dispose of a plaintiff's claim that a statutory violation was prima facie evidence of negligence). To bring a private cause of action based on a violation of a statute, a plaintiff must satisfy the

following four-part test promulgated in *Hurley v. Allied Chem. Corp.*, 262 S.E.2d 757 (W. Va. 1980):

> (1) the plaintiff must be a member of the class for whose benefit the statute was enacted; (2) consideration must be given to legislative intent, express or implied, to determine whether a private cause of action was intended; (3) an analysis must be made of whether a private cause of action is consistent with the underlying purposes of the legislative scheme; and (4) such private cause of action must not intrude into an area delegated exclusively to the federal government.

*Arbaugh*, 591 S.E.2d at 239 (quoting Syl. pt. 1, *Hurley*, 262 S.E.2d at 758); *see also Shawkey*, 2011 WL 1229784, at *5. West Virginia has not considered whether the ADA satisfies this test.

As for the first prong of the *Hurley* analysis, it is clear that Congress intended to benefit disabled individuals by enacting the ADA. *See PGA Tour, Inc.*, 532 U.S. at 674 ("Congress enacted the ADA in 1990 to remedy widespread discrimination against disabled individuals."). The ADA's text reinforces this conclusion as it sets forth its purpose as follows:

> (1) to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities;
>
> (2) to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities;
>
> (3) to ensure that the Federal Government plays a central role in enforcing

the standards established in this chapter on behalf of individuals with disabilities; and

(4) to invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities.

42 U.S.C. § 12101(b). Thus, to this end, Title III of the ADA prohibits discrimination against disabled individuals in public accommodations. See 42 U.S.C. § 12182(a).

The Court finds that the Plaintiffs cannot rely on a violation of the ADA as prima facie evidence of negligence. See **Arbaugh**, 591 S.E.2d at 239. As a threshold matter under the **Hurley** test, the Plaintiffs must show that Mrs. Christian was a disabled individual when she fell as that is the class for whose benefit Congress enacted the ADA. See **PGA Tour, Inc.**, 532 U.S. at 674; see also 42 U.S.C. §§ 12101(b), 12182(a). The Plaintiffs, however, have not produced any such evidence. Instead, they have contended that they can proceed on a prima facie evidence of negligence theory without such proof. They therefore have failed to satisfy the **Hurley** test. Further, given the established principle that a private cause of action for damages is unavailable under Title III of the ADA, allowing the Plaintiffs to proceed on this theory would contradict not only the ADA, but West Virginia's concern that violation of a statute only give rise to liability when a "statute creates an implied private cause of action." See **Arbaugh**, 591 S.E.2d at 239; see also **Lugo v. St. Nicholas Assocs.**, 772 N.Y.S.2d 449, 454-55 (N.Y. Sup. Ct. 2003) (holding that the plaintiff could not proceed on a negligence per se

theory as the "plaintiff would effectively be afforded a private right of action that the ADA does not recognize"). Accordingly, the Court grants summary judgment as to the Plaintiffs' claim that a violation of the ADA is prima facie evidence of negligence.

### 3. Summary Judgment as to Common Law Negligence Claim

Finally, the United States contends that the Plaintiffs' common law negligence claim fails as a matter of law because they have not established that the United States owed Mrs. Christian a duty of care. The Court will address the two arguments that the United States makes to support this contention in turn.

#### a. Obvious and/or Well-Known Nature of the Danger Posed by the Storm Drain

The United States argues that the Plaintiffs cannot establish liability because the storm drain was an obvious danger of which Mrs. Christian had prior knowledge. The United States contends that the pictures of the storm drain show that it is an obvious danger as yellow diagonal lines designated the storm drain and its sloping pavement. Further, the United States argues that Mrs. Christian had prior knowledge of the storm drain as she "had been to the area in question on numerous occasions" and "had at least walk[ed] directly past the storm drain as she entered the hospital." ([Doc. 31], p. 10).

Relying on their depositions [Docs. 34-1, 34-2] and the Architect's Report of their expert witness, James. J. Secosky [Doc. 34-3], the Plaintiffs contend that there are genuine disputes of material fact regarding the appearance of the storm drain area and Mrs. Christian's knowledge of the area before the incident.

To prevail on a negligence claim under West Virginia law, the plaintiff must

9

establish "that the defendant owed a legal duty to the plaintiff and that by breaching that duty the defendant proximately caused the injuries of the plaintiff." *Strahin v. Cleavenger*, 603 S.E.2d 197, 205 (W. Va. 2004) (citation omitted). A landowner has no duty to protect an individual "from dangers that are obvious, reasonably apparent, or as well known to the person injured as they are to the" landowner. *Burdette v. Burdette*, 127 S.E.2d 249, 252 (W. Va. 1962).

There are several genuine issues of material fact that preclude summary judgment on this issue. First, there are factual disputes regarding the appearance of the storm drain on the day of the incident that go to the heart of whether it was an obvious danger. For instance, the United States contends that the pictures taken by Mr. Christian one month after the incident show the obvious nature of the hazard posed by the storm drain. ([Doc. 31], p. 10); ([Docs. 31-1 to 31-4]). In contrast, the Plaintiffs argue that Mr. Christian's deposition calls this conclusion into question as he testified that the pictures do not reflect what the storm drain area looked like when Mrs. Christian fell (e.g., the yellow paint "was a lot lighter" such that "you couldn't see the paint"). ([Doc. 34-2], 10:15-11:3). There are also material factual disputes regarding whether the storm drain posed a danger "well known" to Mrs. Christian. The parties dispute whether the evidence establishes that Mrs. Christian had ever walked by the storm drain prior to January 10, 2010 or had seen the storm drain on the way into the hospital the day that she fell. Therefore, these disputes are not appropriately resolved in a motion for summary judgment.

**b. Lack of Evidence Showing Actual or Constructive Knowledge**

The United States argues that the Plaintiffs have not established that the United States owed them a duty of care because there is no evidence or allegation that the United States knew or should have known that the storm drain posed a danger to pedestrians.

In premises liability actions, a landowner owes "a duty of reasonable care under the circumstances" to non-trespassers. *See* Syl. pt. 4, **Mallet v. Pickens**, 522 S.E.2d 436, 437 (W. Va. 1999). The Supreme Court of Appeals of West Virginia has established the contours of this duty:

> The ultimate test of the existence of a duty to use care is found in the foreseeability that harm may result if it is not exercised. The test is, would the ordinary man in the defendant's position, knowing what he knew or should have known, anticipate that harm of the general nature of that suffered was likely to result?

*Id.* at Syl. pt. 5 (citation omitted).

Moreover, to establish liability in a slip-and-fall case, the plaintiff must show (1) that the landowner "had actual or constructive knowledge of the defective condition which caused the injury;" and "(2) that the invitee had no knowledge of the substance or condition or was prevented by the owner from discovering it." **Hawkins**, 633 S.E.2d at 35. West Virginia courts have declined to find the actual or constructive knowledge requirement satisfied when a latent condition is at issue. *Id.* at 33, 36-38 (finding no actual or constructive knowledge of a pipe that had been buried in a softball field that injured the plaintiff when he slid into first base where there was no evidence that the

11

defendants had known of the pipe's existence); ***McDonald v. Univ. of W. Va. Bd. of Trustees***, 444 S.E.2d 57, 60-61 (W. Va. 1994) (finding the defendant had no actual or constructive knowledge of a "little pit" in a lawn that precipitated the plaintiff's fall where the plaintiff "failed to show . . . actual knowledge of the defect" and "[t]he record . . . suggest[ed] that the defect was so minor that it could not be later located").

Here, the United States has not shown that the Plaintiffs have failed to produce evidence that the harm that occurred to Mrs. Christian was foreseeable. Unlike ***Hawkins*** and ***McDonald***, the record shows that the condition at issue–the storm drain area–was not hidden such that the United States would not have had actual or constructive knowledge of its existence. *See **Hawkins***, 633 S.E.2d at 36-38; ***McDonald***, 444 S.E.2d at 60-61. To the contrary, the evidence, viewed in the light most favorable to the Plaintiffs, indicates that the United States was aware or should have been aware of this condition and that it posed a danger to pedestrians as the parties do not dispute that yellow lines designated the storm drain area.[1] Accordingly, the Court denies the United States's Motion for Summary Judgment as to the Plaintiffs' common law negligence claim.

## V. Conclusion

For the foregoing reasons, the Defendant's Motion for Summary Judgment [Doc. 30] is **GRANTED** in part and **DENIED** in part.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to all counsel of record

---

[1] As noted above, the parties are only disputing the appearance of the yellow lines, not whether they existed when the incident occurred.

herein.

**DATED**: November 4, 2013.

                                                GINA M. GROH
                                                UNITED STATES DISTRICT JUDGE